## 11749

### HARVEY, ADMR. v. PHILADELPHIA LIFE INS. CO.

#### (127 S. E., 836)

1. INSURANCE—POLICY FORFEITED BY NONPAYMENT OF NOTE IN ABSENCE OF WAIVER OR ESTOPPEL.—Nonpayment at maturity of note given for part of premium *held* to work forfeiture of policy in absence of waiver or estoppel.

2. INSURANCE—GRANTING OF EXTENSION FOR PAYMENT OF PREMIUMS ALONE INSUFFICIENT TO SHOW WAIVER OF PROVISION FOR LAPSE OF POLICY FOR SUBSEQUENT NONPAYMENT.—Extensions of time for payment of premiums upon giving of notes *held* not in themselves sufficient to support inference of waiver of provisions for lapse of policy for nonpayment of last note.

3. INSURANCE—"WAIVER" AND "ESTOPPEL" NOT INTERCHANGEABLE AS USED IN LAW OF INSURANCE.—"Waiver" and "estoppel" are not interchangeable as used in law of insurance; "waiver" meaning the intentional relinquishment of a known right, while "estoppel" involves, as an essential element, ignorance of party invoking the estoppel, and an innocent and deleterious change of position in reliance on misleading representations or conduct of party estopped.

4. INSURANCE—EVIDENCE HELD TO MAKE JURY QUESTION WHETHER INSURER WAS ESTOPPED TO INSIST ON CANCELLATION OF POLICY FOR NONPAYMENT ON DUE DATE OF EXTENSION NOTE.—Evidence that policy had been continued in force upon giving of extension note without medical certificate of insurability, after its lapse for nonpayment of prior extension note, and that policy contained provision for thirty days' grace in payment of premium, which insured might

406    Harvey, Admr., v. Phila. Life Ins. Co.

| Opinion | [131 S. C. |
|---|---|

have construed as applicable to payment of extension note, *held* to make question for jury whether insurer was estopped to insist on cancellation of policy for nonpayment on due date of second extension note.

5. Insurance—Insured Held Not to Have Waived Right to Insist on Estoppel of Insurer.—Insured's attempt to comply with conditions for reinstatement and request for information as to whether policy had been reinstated, and for return of his money if it had not been, *held* insufficient to establish waiver by him of right to insist that company was estopped from claiming cancellation of policy in absence of evidence that he knew of such right against company.

Before Sease, J., Orangeburg, 1923.    Affirmed.

Action by Julius H. Harvey as Administrator of the Estate of Henry H. Harvey, deceased, against Philadelphia Life Insurance Co. of Philadelphia.  Judgment for plaintiff and defendant appeals.

*Messrs. Thomas & Lumpkin,* for appellant, cite:  *Failure to pay note for premium avoids policy:*  125 S. E., 285; 95 S. E., 2; 72 S. C., 219; 104 U. S., 237; 93 S. C., 90; 108 S. C., 137; 105 S. C., 164; 57 S. E., 892; 112 U. S., 696; 72 S. E., 863; 103 S. C., 288.  *Waiver;*  125 S. E., 285; 95 S. C., 3; 93 S. C., 90.

*Mr. Jno. S. Bowman,* for respondent, cites:  *Grace in payment of note:*  96 S. C., 375.  *Question for jury:*  121 S. C., 388.

April 15, 1925.

The opinion of the Court was delivered by Mr. Justice Marion.

Action on a life insurance policy for $1,000, contested by the defendant on the ground that the policy had lapsed for nonpayment of the premium.  From judgment on verdict for the plaintiff, defendant appeals.

The exceptions assign error in the refusal of the trial Court to grant defendant's motions for a directed verdict, and for a new trial upon grounds which necessitate a somewhat extended statement of the evidentiary facts.  There

was evidence which established or tended to establish the following facts:

The policy was issued May 28, 1919. Each of the first two annual premiums of $89.98 was paid in advance in due time. When the third annual premium became due on May 28, 1921, the insured arranged to pay a portion of the premium in cash and to give his extension note for the balance. The extension note matured August 28, 1921; the notation, "Due August 28, 1921," being written in the note. This note was not paid at maturity. On August 29, 1921, the local agent of the company at Orangeburg, S. C., wrote the general agent, Platt, at Sumter, S. C.:

"Rev. H. H. Harvey has a premium due today and he can only pay you $25. Will you please accept this and extend payment 60 days for him?"

There appears to have been a reply letter by Platt, to the effect "that if you will have this man sign the inclosed note," etc.; but the date and contents of the letter are not set out in the record. The $25 and a second extension note for $48.06, due October 28, 1921, were accepted by the company after the maturity of the first extension note—how long after does not distinctly appear—and the policy continued in force. There is no evidence that a health certificate was required. This second extension note, due October 28, 1921, was not paid at maturity. On November 1, and November 12, 1921, the company wrote the insured, Harvey, to the effect that his policy had lapsed for nonpayment of the extension note due October 28, 1921, and that the policy could be reinstated on payment of the note and the furnishing of a health certificate satisfactory to the medical department. On November 26, 1921, Harvey sent the company a postal money order for $48.56 accompanied by his personal certificate on one of the company's regular forms, "required for reviving a policy where the premium is more than one and less than three months overdue," to the effect that he was then "in good health," etc. On December 1, 1921, the

company wrote Harvey, acknowledging the receipt of the money order and the health certificate, and advising:

"Our medical department is unable to approve this health certificate, and we are, therefore, returning your money order for $48.56."

On December 10, 1921, the company again wrote Harvey from its Philadelphia office as follows:

"We are in receipt of money order of $48.56 which you forwarded in payment of your note of $48.06, due October 28, 1921, on your policy No. 46150 for nonpayment of which note said policy lapsed.

"Our medical department is unable to approve the health certificate which you forwarded, and it will, therefore be necessary for you to call on Dr. Henry P. Moore, Orangeburg, S. C., and have the inclosed medical health certificate form filled in by him. The fee for this examination of $3 is to be paid by you.

"On receipt of this health certificate, we will be pleased to reinstate the policy, provided the same is satisfactory to our medical department.

"We have placed your remittance of $48.56 in our suspense account pending receipt of this examination."

On January 4, 1922, Harvey wrote the company as follows:

"I have complied to all of your demands, I sent check to cover policy No. 46150. I also was examined by Dr. Moore at your request on the 15th of December, fee $3. I paid it, now please let me hear from you whether or not I am reinstated on policy No. 46150 and if not you will kindly send the money back $48.56. Sorry it happened so but could not be helped.

"Yours for reply by return mail,

"HENRY H. HARVEY."

On January 6, 1922, the company wrote Harvey the following letter (admitted by plaintiff to have been found among Harvey's papers after his death):

"We beg to acknowledge receipt of your favor of the 4th relative to policy No. 46150, which lapsed for nonpayment of note for $48.06, which became due on October 28, 1921.

"We regret to advise you that our medical department were unable to approve medical health certificate which we received in connection with your application for reinstatement of this policy.   Therefore, we are compelled to return your money order for $48.56."

After the commencement of this suit at a time not disclosed by the record, the writer of the foregoing letter testified by deposition that the money order was returned by United States Mail and that the letter was deposited by him in the United States Mail chute in the company's office on January 6, 1922.   The evidence discloses nothing further as to the money order or as to any subsequent communication between the parties.   Harvey died March 19, 1922.

The defendant's motions for a directed verdict and for a new trial, the refusal of which is assigned as error in appellant's three exceptions, were based substantially upon the two grounds:   (1) That under the terms and conditions of the policy and the note maturing October 28, 1921, the policy lapsed for nonpayment of the note at maturity; and (2) that there was no evidence of waiver or estoppel.

As to the first ground:   The question here presented is, in essentials, the same as that fully considered and elaborately discussed in the opinion of this Court (Mr. Justice Cothran) in the recent case of *Gunter v. Insurance Co.,* 125 S. E., 285.   Under the views therein announced, there is no room for doubt that the effect of the failure of the insured to pay the extension note due October 28, 1921, containing the provision:

"That if this note is not paid at maturity, or at the expiration of any period to which it shall have been extended, the said insurance contract   *   *   *   shall lapse and all further liability of the said Philadelphia Life Insurance

Company shall immediately cease and determine, subject to the privileges and provisions therein stated," etc.

—was, in the absence of waiver or estoppel, to work a forfeiture of the insured's rights under the policy. The receipt issued for the annual payment due May 28, 1921, contained a specific reference to the note in this language: "Extension note to Aug. 28, 1921." The two extension notes were as much a part of the agreement of the parties as the receipt and the policy. The policy contained the provisions that "failure to pay any premium or note when due will forfeit the policy and all payments made thereon" and that "this policy may be reinstated on written application subject to evidence of insurability satisfactory to the company," etc. That the written contract expressly provided for the forfeiture on failure to pay the second extension note—which was not paid at maturity—seems to have been the construction given the contract by his Honor the presiding Judge, who in effect so interpreted the contract in his charge. The theory upon which he submitted the case to the jury is indicated by the following excerpt from the charge:

"The law says that if there is any reasonable circumstance upon which to stand to prevent a forfeiture of the contract it must be done. * * * So if there is any reasonable grounds by which you can or where a reasonable man would have been led by the course of dealings, that the plaintiff did have 30 days of grace, after the note became due, the note for the premium * * * why then the jury would find for the plaintiff," etc.

No exception is taken to the charge and the appeal, therefore, turns wholly upon the question of waiver or estoppel.

As to the second ground, that there was no evidence of waiver or estoppel: The question for determination is not free from difficulty. There was evidence tending to establish that Harvey, the insured, believed that he had 30 days of grace within which to pay the note due October 28, 1921,

and that he made tender of the amount due on the note within the 30 days, viz., on November 26, 1921; that the arrangement for paying the premium due May 28, 1921, partly in cash and partly by note, was completed after May 28, but within the 30 days of grace; that the first extension note due August 28, 1921, was not paid at maturity; that after the lapse of the policy, on account of such nonpayment, negotiations were conducted between Harvey and the local agent and between the local agent in Orangeburg and the general agent in Sumter as a result of which Harvey paid a portion of the amount due in cash and gave the second extension note due October 28; that the policy was continued in force after the lapse, occurring on August 28th, without requiring either a medical certificate or examination; that the policy contained a provision to the effect that a "grace of one month shall be granted for the payment of every premium after the first, during which time the policy shall continue in force."

That the extensions granted the insured in paying the amounts due on the premium May 28th, and on August 28th, are not in themselves sufficient to support any inference of waiver has been definitely ruled by this Court in the case of *Gunter v. Insurance Co., supra.* That conclusion is in accord with the result reached, and the views announced in *Parry v. Insurance Co.,* 95 S. C., 1; 78 S. E., 441, and in *Perkins v. Insurance Co.,* 93 S. C., 88; 76 S. E., 29. As was said in *Gunter v. Insurance Co.:*

"Surely an extension, which by its terms [the extension note] provided for the right of forfeiture, cannot be considered as a waiver of that for which provision was made."

But, conceding that no inference of an intent to waive or relinquish the right of forfeiture may be indulged in the face of the express provisions of the extension note providing for such forfeiture, it is contended here that there was some evidence to support an estoppel. Although "waiver" and "estoppel" are often loosely used interchangeably in the law of insurance, they are not convertible terms.

27 R. C. L., 905, § 2.   A waiver is an intentional relinquishment of a known right, while the essential elements of estoppel are the ignorance of the party who invokes the estoppel, representations, or conduct of the party estopped which mislead, and an innocent and deleterious change of position in reliance on such representations or conduct.   27 R. C. L., 905.   In its application to insurance contracts the doctrine of estoppel by conduct is thus well stated by Mr. Justice Bradley in *New York Life Ins. Co. v. Eggleston,* 96 U. S., 572, 577 (24 L. Ed., 841).

"Any agreement, declaration, or course of action, on the part of an insurance company, which leads a party insured honestly to believe that by conforming thereto a forfeiture of his policy will not be incurred, followed by due conformity on his part, will and ought to estop the company from insisting upon the forfeiture, though it might be claimed under the express letter of the contract."

In the case of *Hartford Life, etc., Ins. Co. v. Unsell,* 144 U. S., 439; 12 S. Ct., 671; 36 L. Ed., 496, the Supreme Court (Mr. Justice Harlan) approved a charge which was in part as follows:

"Of course we speak by our actions, just as much as we do by our words; and although there may be no spoken word, no written word, declaring a waiver, yet it may be that a man by his conduct, his course of dealing, justly and fairly leads the other party to believe that he does not care about a strict compliance.   That is what this plaintiff says was the case here; that while the contract reads 'payment must be made on specified days,' yet the company did not insist on such payment.   It did, when her husband was alive and well, take the dues from him after the time specified and permit the policy to continue in force, and that it did so until he had a right, as a reasonable man, to believe, and did in fact believe, that that was to be the rule in the future.   I do not think that any particular number of instances, one or more, can be said as a matter of law to make or not make

a waiver. * *. * If the company, by its conduct, led him, as a reasonable and prudent business man, to believe that he could make payments a few days after, sick or well, it cannot turn around now and say. 'You did not pay at the time.' I cannot say to you, as a matter of law, that one receipt, after the time specified, would make a waiver, or that 50 would. It is not in the numbers. The question is for you to consider and determine from all of them and from the whole course of business, whether, as a prudent business man, he had a right to believe that it was immaterial whether he paid on the day or a few days later."

Commenting thereon the Court said:

"The law applicable to the case was stated to the jury with substantial accuracy. It is a mistake to suppose that the charge was inconsistent with the principles announced in *Thompson v. Knickerbocker L. Ins. Co.,* [104 U. S., 252], or in any other case decided by this Court."

Applying the foregoing principles to the facts of this case, we are of the opinion that it· cannot soundly be held, as a matter of law, that there was. no evidence to support an estoppel. The facts that the company did not claim a forfeiture on nonpayment of the first extension note at maturity, and that thereafter the policy was continued in force without a medical certificate of insurability, might reasonably have led Harvey to believe that a forfeiture of his policy would not be incurred by a failure to pay the second note promptly at maturity, and that the 30 days grace applied to the note as well as to the due date of the annual premium. We think the evidence is further fairly susceptible of the inference that Harvey acted on that belief to his detriment and that the amount due on the note was tendered within a reasonable time. In that view, whether the company was estopped to insist on the forfeiture was properly an issue for the jury.

Appellant contends, however, that even if there was some evidence of waiver or estoppel that Harvey by endeavoring to comply with the conditions imposed

by the company for reinstatement, by requesting information as to whether he had been reinstated, and by demanding the return of his money order (letter of January 4, 1922), himself waived any right to require the company to continue the policy in force. But there is no evidence that Harvey knew of his right to invoke the doctrine of waiver or estoppel as against the company or that the company was in any way misled to its injury by Harvey's conduct. If so, there was no basis for the application of the doctrine of waiver or estoppel as against Harvey. But if there had been evidence of that tenor, the issue, under the facts of this case, would seem clearly to have been for the jury.

We conclude that there was no error in refusing defendant's motions for a directed verdict, and for a new trial on the grounds assigned. The exceptions are overruled, and the judgment of the Circuit Court is affirmed.

MESSRS. JUSTICES WATTS and FRASER concur.

MR. CHIEF JUSTICE GARY and MR. JUSTICE T. P. COTHRAN did not participate.

MR. ACTING ASSOCIATE JUSTICE W. C. COTHRAN (dissenting). The facts of this case are fully set out in the leading opinion and need not be repeated.

That there was no waiver in this cause is admitted in the leading opinion as it follows *Gunter v. Insurance Co.* But the question of estoppel is brought in and a question on that subject is left for the jury to consider. It will be necessary to refer briefly to some facts in discussing this phase of the opinion.

The premiums due for the first two years of the policy were promptly paid and the first default came in the third. Cash and a note were accepted. At maturity this note was not paid in full but a payment of $25 was accepted together with a new note for $48.06 due in 60 days. Just here the opinion of the Court points out that no health certificate had been required. Quite true. It was not necessary for

the reason that the policy had not lapsed for nonpayment of premium. The cash and the accepted notes prevented a lapse and there was no reason or requirement for the health certificate. It can hardly be maintained that the insurance company estopped itself from later demanding a health certificate by not demanding one when it had no right to do so.

It is also claimed that the provision for 30 days of grace might have misled the insured to his prejudice. It must be borne in mind that this additional time referred only to the payment of the premiums, and not to the notes given for extension. The notes extended the time of payment of the premiums twice as long as the days of grace did and the notes themselves set forth the date when they were due. The notes contained a separate contract of extension of time for payment, and there was nothing in the policy to show that the 30 days of grace applied to this separate contract; nor was there any testimony to show that the company caused the insured so to consider it.

But to continue. The second extension note was not paid when due on October 26, and on November 1st and 12th the company wrote the insured that the policy had lapsed for nonpayment of premium. Then it was that the health certificate was required for the reason that the policy had lapsed. Efforts were then made to reinstate the policy, but such health certificates as were sent in were not acceptable to the medical department, as they were required to be under the terms of the policy. There was never a reinstatement of the policy after it was declared lapsed in November, and the insured did not die until the following March.

The last correspondence between the parties took place in January before the death of the insured. In December the company had tried again to have the insured send in a satisfactory certificate of good health but this was not done. Finally, on January 4, the insured wrote that he had done all that he could and wanted to know if his policy had been

reinstated and, if not, he wanted his last remittance returned to him. Just two days after the date of this letter the company wrote that the certificate was not satisfactory to the medical department and the remittance was returned. To all appearances the chapter ended here. No more letters were written, no days of grace were claimed, no certificates of health were sent in, no payments on the premium, no reinstatement of the lapsed policy. The next notice to the company was of the death of the insured in March and a claim for the insurance.

Under these conditions I must admit my inability to discern any possible evidence of estoppel on the part of the company. In my opinion, a verdict for the defendant should have been directed.