13681

GILREATH v. SECURITY LIFE & TRUST CO.

(170 S. E., 445)

*Messrs. Blythe & Bonham,* for appellant,

*Mr. Stephen Nettles,* for respondent,

August 16, 1933.

The opinion of the Court was delivered by Mr. Justice Carter.

This action by Mrs. Ola B. Gilreath, as administratrix of the estate of her deceased husband, Charles Ingram Gilreath, against the defendant, Security Life & Trust Company, commenced in the Court of Common Pleas for Greenville County, May 22, 1931, is a suit on an insurance policy, issued by the defendant on the life of the said Charles Ingram Gilreath. The policy is dated December 17, 1929, and the amount named therein is $5,000.00, but it is alleged by the plaintiff that the policy was modified by reducing the amount to be paid thereunder from $5,000.00 to $2,500.00, and also by reducing the stipulated premium accordingly. The suit is, therefore, for recovery, not for the sum of $5,000.00, but for the sum of $2,500.00. It is not disputed that the policy lapsed for nonpayment of the second premium on January 17, 1931, the expiration of the thirty days' grace provided in the policy for the payment of the premium. It further appears from the record in the case that application for reinstatement of the policy was made by the insured on February 13, 1931, the application stating: "Amount Five Thousand ($5,000.00) Dollars to be reduced to Twenty-five Hundred ($2,500.00) Dollars." The insured died at his farm in Greenville County from cerebral hemorrhage on the morning of February 19, 1931. The defendant, in its answer, admitted issuing the policy, but denied liability thereon, contending that the policy had lapsed, and that the same had not been reinstated for any amount. Issues being joined, the case was tried at the February, 1932, term of said Court before Judge M. M. Mann and a jury, resulting in a verdict for the plaintiff in the sum of $2,500.00. From entry of judgment on the verdict the defendant has appealed to this Court.

Under the appellant's exceptions error is imputed to the trial Judge in the following particulars: (1) Refusing defendant's motions for nonsuit and direction of a verdict; (2) submitting to the jury the question of waiver; (3) excluding the testimony of Dr. Baker offered by the defendant as to the examination of the insured; and (4) not excluding

alleged conversations between Mr. Epting and Mr. Hunter agents, with the plaintiff on January 27, 1931, and February 3, 1931.

The policy in question, which was issued December 17, 1929, was made payable to the estate of the insured upon his death, and the first annual premium was paid when the policy was issued. Two or three weeks before the second annual premium fell due, Messrs. Epting & Hunter, agents for the defendant, covering the territory where the insured resided, notified the insured, in writing, to the effect that the second, annual premium of $311.30 would become due December 17, 1930. On or about December 9, 1930, the insured wrote these agents to the affect that he was not able to make payment and would have to let the policy lapse. It seems that two or three letters passed between these agents and the insured, the agents urging him not to allow the policy to lapse, but to keep it alive, and suggested that he pay a part of the amount and execute a note for the remainder. However, the insured did not follow the suggestions, and the policy lapsed for nonpayment of premium. The residence of the insured was in the City of Greenville, where he maintained a home for his wife and children, but he spent the greater part of the time on his farm some distance from the City of Greenville, usually returning to the city at the end of each week for the purpose of spending the week-end with his family. According to the testimony of Mrs. Gilreath, on January 27, 1931, Mr. Epting and Mr. Hunter went to her home in Greenville to see her regarding the policy, and requested her to pay the premium on this policy, but she informed them that she was unable to do so. According to the testimony of Mr. Hunter and Mr. Epting, the date of their call to see Mrs. Gilreath was January 16, 1931. It further appears from the testimony of Mrs. Gilreath that on February 3, 1931, Mr. Hunter had a phone conversation with Mrs. Gilreath in which Mr. Hunter stated, in effect, that he intended going out to the farm of the insured for the purpose of trying to get him

to keep up the policy, and Mrs. Gilreath encouraged Mr. Hunter to do so. Later the same day, according to Mrs. Gilreath's statement, Mr. Hunter called at the home of Mrs. Gilreath and informed her that he succeeded in getting her husband, the insured, to continue the policy, but reducing the amount to $2,500.00, and on that occasion exhibited to her a check for the sum of $25.00 given by the insured, also, a note executed by the insured for the sum of $130.65 covering the annual premium on a $2,500.00 policy. It further appears from the testimony of Mrs. Gilreath that, in compliance with the request of Mr. Hunter, Mrs. Gilreath, on that occasion, delivered to Mr. Hunter, as such agent, the said policy issued December 17, 1929, and was told, in effect, at the time by Mr. Hunter, that the policy was good to the extent of $2,500.00, that the same was in force, and that, if anything should happen (meaning if the insured should die in the meantime), there would be no trouble, that the policy was just as good as gold. In this connection it is well to state that it may be reasonably inferred from the testimony that Mr. Epting and Mr. Hunter were acting as general agents of the defendant. It appears from the testimony in the case that on the afternoon of the day Mr. Hunter received from Mrs. Gilreath the said policy, that is, February 3, 1931, either Mr. Epting or Mr. Hunter forwarded to the home office of the company the said check, note, and application for reinstatement. It, also, appears from the testimony that thereafter, on the 14th day of February, 1931, Mr. Epting phoned Mrs. Gilreath, making inquiry as to when the insured would be at home, and stated that he wanted to see him. Mrs. Gilreath, not being able to give the information at the time, requested Mr. Epting to call later, about noon of that day. In the meantime she heard from her husband, and when Mr. Epting called her the second time she informed Mr. Epting that her husband would not be at home that day, but would remain at the farm. It further appears that at this second phone conversation Mrs. Gilreath

asked for information regarding the purpose of seeing her husband and was told by Mr. Epting that an examination was desired. Whereupon, according to the testimony of Mrs. Gilreath, she made the following statement to Mr. Epting: "I said, well, I thought Mr. Hunter told me this was all right, that it was in force right then, and he said, well, I want to see him again for an examination, and I said now if you do, if you will take your doctor up there in the morning, even if it is Sunday, you will find him right there, and he said I will do that without fail."

In this connection we call attention to the fact that the portion of the application, which the insured signed for reinstatement, intended to be filled out by an examining physician, was left blank, and it may be reasonably inferred from the record that neither the insured nor Mrs. Gilreath knew that an examination would be required by the company for reinstatement, or that such examination was desired. At least, it clearly appears from the testimony of Mrs. Gilreath that she knew nothing of an examination being desired until after this last phone conversation, above mentioned, with Mr. Epting, and, in our opinion, a reasonable inference to be drawn from the entire record is that it was the intention of the insurance company to waive the medical examination in connection with the reinstatement application. As stated, the insured died on the 19th day of February, which was Thursday following the above-stated conversation between Mr. Epting and Mrs. Gilreath on Saturday, and we think it may be reasonably inferred from the record that the insured did not see or hear from Mr. Hunter or Mr. Epting or any one else regarding a medical examination from the time he signed the said application to the time of his death.

Referring to the testimony offered on the part of the defendant, it is shown that either Mr. Hunter or Mr. Epting, taking a doctor with him, went to the farm of the insured on the afternoon of the day of the insured's death for the

purpose of making a medical examination of the insured, not knowing of the insured's death until after arriving there. Defendant also offered testimony tending to show that the defendant had been unable to procure a physician to make an examination earlier. While the application for reinstatement of the policy contains a provision that the same should be approved by the medical director before the policy could be reissued, the note given by the insured contains a provision, in effect, that the note and the check were accepted by the company under agreement that the insurance, under the policy in question, was to continue of force until midnight of the due date of the note, which was May 1, 1931. A day or two after the death of the insured, Mr. Epting wrote a letter to Mrs. Gilreath, expressing his sympathy on account of her husband's death, and in the same letter sent to Mrs. Gilreath the check and note in question, stating to Mrs. Gilreath in this letter that the policy had lapsed for non-payment of the premium on the same. This application for reinstatement contained statement to the effect that the amount was reduced to $2,500.00. The check in question was drawn to the order of Mr. Epting while the note was made payable to the order of the insurance company at its home office, Winston-Salem, N. C., and the same, note and check, were mailed to the home office of the company promptly after the same were executed, the check being indorsed by Mr. Epting. As stated above, a day or two after the death of the insured, the note and check were mailed to Mrs. Gilreath. Included in the testimony offered on behalf of the plaintiff is the testimony of Mr. Holden Gilreath, brother of the insured, who testified that a short time before the death of his said brother Mr. Hunter told him (the witness), that he had succeeded in getting the insured to renew his policy.

While the defendant offered testimony to contradict many of the statements made by plaintiff's witnesses, especially the statements of Mrs. Gilreath to the effect that the agents of the defendant had stated that the policy was good

at that time, and, if the insured died in' the meantime, the policy would be paid, this is a substantive statement of the testimony in the case presented by plaintiff, pertinent to the issues involved, as we view the same, and bearing in mind, as stated above, that, on motions for a nonsuit and direction of a verdict made by defendant, the testimony must be viewed most favorably for the plaintiff, we cannot hold that the trial Judge erred in overruling defendant's said motion, but think, on the other hand, that his Honor properly submitted the case to the jury. It is true, as contended by defendant, that the policy issued December 17, 1929, lapsed for nonpayment of the second premium on January 17, 1931, but application for reinstatement having been made for one half of the original amount, and the defendant having accepted and kept the application in its possession, together with a check and note and the original policy, under the facts and circumstances above set forth, a question was, in our opinion, raised for the jury as to the intention of the parties and as to whether or not, under the circumstances, the insured at the time of his death had insurance with the defendant for the said sum of $2,500.00. We are unable to agree with appellant's position that there is no evidence that the defendant waived its right to stand on the forfeiture. Defendant, in making its motion for nonsuit along this line, called attention to the following language contained in the policy: "That said policy shall not be reinstated until this application shall be approved by the medical director of the company." The medical director, whose office, it appears, was at the home office of the company, Winston-Salem, N. C., did not, so far as the record discloses, notify the insured of the acceptance of the application, but the application, and the check and note above described, were executed and delivered to the general agents of the defendant under their instruction and at their request, and by said general agents immediately forwarded to the defendant's home office, and, it appears from the testimony, were kept by the defendant

from the day following their execution, February 3, 1931, until after the death of the insured, which was February 19, 1931. This fact, taken in connection with what Mrs. Gilreath testified the general agents told her as to the policy being good, and, also, what the brother of the insured testified to regarding Mr. Hunter's statement to him that the policy had been renewed, and in failing to mention anything about requiring a medical examination, is sufficient, under all the facts and circumstances, to which we have hereinabove called attention, to require the questions involved, including the issue of waiver, to be submitted to the jury. As to whether or not the company had sufficient time to decide whether it desired a medical examination of the insured, and as to whether it acted within a reasonable time in deciding that matter, or whether it intended to waive such right, were all questions for the jury. In this connection we call attention to the fact that the appellant has raised no question regarding the charge to the jury, and we therefore assume that the appellant approves the instruction the trial Judge gave the jury as to their duties in the case.

The exceptions imputing error to the trial Judge in refusing defendant's motions for nonsuit and direction of a verdict must be overruled.

As to the question of waiver, that is disposed of by what we have stated herein in our discussion of the testimony in connection with defendant's motions for a nonsuit and direction of a verdict, except, we may add, that waiver, as held by the trial Judge, in cases of this nature, as in other cases on the civil side of the Court, may be proven by circumstantial evidence as well as by direct testimony. In addition to the facts and circumstances pointed out above, the wording of the receipt given to the insured for the sum of $25.00, paid to the said general agents at the time of executing the said note, has some bearing on the issue. The said receipt reads as follows:

" 'H'—Receipt of Epting & Hunter to Gilreath

"Received of Mr. C. I. Gilreath Twenty-five and No/100 Dollars to be applied on insurance premium.

"[Signed] EPTING & HUNTER,

"2/3/1931."                                        "Per Hunter.

This receipt, of course, had reference to the premium on the $2,500.00 policy, the amount to which the original policy had been reduced, as set out in the application, and from the wording of this receipt it may be reasonably inferred that it was the intention of the parties that the transaction should be considered as completed, for this receipt was signed by Mr. Hunter, a general agent, and delivered to the insured at the time the insured signed the application involved and, also, the note and check in question. Immediately thereafter, Mr. Hunter, according to the testimony of Mrs. Gilreath, wife of the insured, exhibited to her these papers, the check, note, and application, and told her at the time what had transpired between him and the insured, and, also, in effect, stated to her that the policy was good from that day; that, in case anything should happen, it would be paid; and thereupon requested Mrs. Gilreath to deliver to him the old policy, evidently for the purpose of having the change made therein as to the amount. When this testimony is considered, in connection with the fact that the insurance company did not notify the insured that it desired to enforce Part 2 of the policy, that portion giving to the medical director the right to decide whether or not the insured should be examined, and did not return the money, check, or note until after the death of the insured, coupled with all of the other facts and circumstances appearing in the case, to which reference has been made, the question as to whether the defendant intended to waive its rights to stand upon the forfeiture, became a question for the jury. In our opinion, the ruling of the trial Judge on the questions we have discussed herein is amply supported by the decisions of this Court. As was held by this Court in the opinion written by Mr. Justice Stabler,

as the organ of the Court, in the recent case of *Allen v. Jefferson Standard Life Insurance Company*, 139 S. C., 41, 137 S. E., 214, 216: "After knowledge of a breach of the conditions of a contract of insurance by the insured, the insurance company by its acts may waive such breach"—citing the case of *Kingman v. Insurance Company*, 54 S. C., 599, 32 S. E., 762. Another principle recognized by this Court is contained in the following language which we also quote from the case of *Allen v. Standard Life Insurance Company:* "Even though no one of the facts is sufficient in itself to warrant an inference of waiver, yet if, taken together, they tend to produce that result, then there is no error in submitting that question to the jury." *Cope v. Insurance Co.*, 134 S. C., 532, 133 S. E., 440; *Clark v. Insurance Co.*, 101 S. C., 249, 85 S. E., 407.

We also call special attention to the opinion in the recent case of *Harvey v. Jefferson Standard Life Insurance Company*, 165 S. C., 427, 164 S. E., 6, as being applicable to the case at bar.

Another allegation of error imputed to the trial Judge is in excluding the testimony of Dr. Bates, a witness presented by the defendant, as to his examination of the insured. It appears from the record that Dr. Bates had occasion to make an examination of the insured, that is, to some extent, some time before the insured signed the application in question for reinstatement, and the defendant offered this witness, Dr. Bates, for the purpose of showing that the conditions he found on said examination were not in accord with the statements made by the insured in the said application. The trial Court, on objection by plaintiff's counsel, excluded this testimony upon the ground that the fact desired to be established by the defendant constituted an affirmative defense, and as such should have been pleaded in the answer, and, such defense having not been set up in the answer, held, in effect, that the testimony was not applicable and not permissible under the pleadings in the case; for the issue of

concealment or fraud as to the state of insured's health must be raised by an affirmative plea, since the same constitutes an affirmative defense. In this connection we call attention to the case of *Baker v. Metropolitan Life Insurance Company*, 106 S. C., 419, 91 S. E., 324, as supporting the views herein expressed. In our opinion, the cases cited by appellant, *Welch et al. v. Life Insurance Co. of Virginia*, 124 S. C., 492, 117 S. E., 720; *Cooley v. Metropolitan Life Insurance Company*, 153 S. C., 280, 150 S. E., 793; *Johnson v. N. Y. Life Insurance Co.*, 165 S. C., 494, 164 S. E., 175, are not in conflict with the views herein expressed.

Upon the ruling of the trial Judge, as above stated, excluding the testimony of Dr. Bates, the defendant moved to amend the answer so as to be in a position to introduce this testimony. The motion was refused upon the ground that to grant the same would necessitate ordering a mistrial, and his Honor stated that he did not think it was proper to do so. Therefore the motion was refused. The granting of such motions is largely within the discretion of the trial Judge, and under the record before us we are not prepared to hold that there was an abuse of discretion, or that his Honor committed error in refusing to grant defendant's motion.

Another allegation of error charged against the trial Judge is in permitting Mrs. Gilreath to testify to the facts and statements to which we have herein called attention, and especially as to what Mr. Hunter and Mr. Epting, general agents, told her. The main ground upon which the objection was made by the defendant at the trial of the case was that Mrs. Gilreath had not communicated these statements to her husband and that he, therefore, could not have acted upon the same, contending that such could not be any proof of waiver. In this connection we call attention to the fact, in the first place, that, while Mrs. Gilreath was not the beneficiary under the policy, she was deeply interested, and these agents conferred with her regarding the policy for the purpose of getting the same reinstated. They seem to have had

no hesitancy in asking her for information, and consulted her oftener than they did the insured with reference to the policy and getting the same reinstated. In this connection we call attention to the recent case of *Harvey v. Standard Life Insurance Company* above cited. In that case the communications which the partner of the insured had with the agents of the insurance company, at the request of the wife, with regard to the policy and the premium thereon, and which were not communicated to the insured, were admitted as evidence in the case on the question of waiver. It appears that the objection made by the defendant to the testimony of Mrs. Gilreath was directed mainly to that given by her as to the conversation she had with Mr. Hunter February 3, 1931. In this connection we call attention to the fact that, on the day she had this conversation with Mr. Hunter, Mr. Hunter had on that day seen her husband and had procured from her husband the check and note for the renewal premium and exhibited the same to Mrs. Gilreath and at the same time told Mrs. Gilreath that the insurance was in force. As we view the case this is a circumstance from which the conclusion may reasonably be drawn that the facts related to Mrs. Gilreath were also related to her husband, the insured, by Mr. Hunter. The testimony given by Mr. Holden Gilreath had a like bearing upon the case, or it is at least corroborative of the testimony of Mrs. Gilreath.

We have considered it unnecessary to discuss the exceptions separately and have not made reference to every position presented by appellant, but in reaching our conclusion we have given due consideration to the same in connection with the entire record and are of the opinion that the exceptions should be overruled.

It is, therefore, the judgment of this Court that the judgment of the Circuit Court be, and the same is hereby, affirmed.

Mr. Justice Stabler concurs.

Mr. Chief Justice Blease and Mr. Justice Bonham concur in result.