13720

McGUINN v. AETNA LIFE INS. CO.

(171 S. E., 793)

*Mr. Horace L. Bomar,* for appellant,

*Messrs. Hall & Vassy* and *J. H. Hall,* for respondent,

November 18, 1933.

The opinion of the Court was delivered by MR. CHIEF JUTICE BLEASE.

Elbert Noah McGuinn, husband of the plaintiff, had delivered to him by the defendant insurance company, on November 6, 1926, an insurance policy on his life, in the sum of $1,000.00, wherein the plaintiff was named as beneficiary. The insured died on June 23, 1932. The plaintiff's demand for the amount claimed by her to be due, under the terms of the policy, being refused by the defendant, she entered this suit.

The defendant plead forfeiture of the contract, on the ground of nonpayment of the premium due November 6, 1931. To that plea, the plaintiff rejoined with a claim of waiver.

From a verdict of the jury, and the resulting judgment entered thereon, favorable to the plaintiff, in the Court of Common Pleas for Cherokee County, the defendant has appealed to this Court. By its nine exceptions, it presents four questions for our consideration.

The first and second questions may be disposed of together, the former relating to the admission of testimony, and the latter to the refusal of the trial Judge to direct a verdict in favor of the appellant.

A summary of the evidence, and one favorable to the respondent, as it is our duty to view it, adduced in the trial, necessary for the determination of the legal questions, discloses the following: The policy provided for the payment of an annual premium of $30.03, on or before the 6th day of November in each and every year for five years and of an annual premium, payable at the same time, thereafter of $58.56. The first four premiums, including the initial premium, were duly and promptly paid, presumably in cash. To pay the fifth premium, falling due on November 6 1930, the insured borrowed from the company on his policy $30.00, for which he made his note, or loan agreement, therefor, bearing interest at 6 per cent. per annum. At the end of the fifth year, the policy provided for extended insurance for one year and forty-seven days, or a cash or loan value of $32.00. The premium due November .6, 1931, was not paid, and no payment on the note was made.

On December 5, 1931, the general agent of the insurance company, whose office was in Chester, wrote the insured a letter, advising him that the days of grace for the payment of the premium due on November 6, 1931, would expire the following day, and requested the insured if he could not pay the full amount of premium to sign the inclosed extension form and return it with his remittance of $10.00, and the company would be glad to extend the balance for thirty days. No response to that letter was made by the insured. Two days later, December 7th, the general agent wrote the insured that the days of grace had expired; that no remittance of the premium had been received; that the insured had not returned the signed extension agreement, with the partial payment of $10.00, as formerly requested; and asked the insured to give attention to the matter by early mail. (A

copy of the letter was sent to the local, or soliciting, agent of the company.) The insured did not answer that letter. From the time of this last letter, until April 16, 1932, there appears to have been no further communication between the insured and the company.

On the day last named, the local agent of the insurance company visited the insured at his home, in Gaffney, and urged him to make an application for the reinstatement of the policy. According to testimony given by the respondent and her daughter, who were present at the time of the transaction and conversation between the insured and the agent, the latter informed the insured that if he would pay $30.00 on the premium of $58.56, due November 6, 1931, that the policy would be reinstated and would be good, and it would not be necessary for the insured to have any medical examination; that the balance of the premium could be paid later, and she (the agent) would come and get the money when the insured could pay it. To this proposition of the agent, the insured agreed. The agent suggested that the sum of $30.00 should be deposited in bank by the insured, and the check of the insured for that amount sent by him to the general agent at Chester. At the time of the stated agreement as to the reinstatement of the policy, the insured appeared to be in excellent health.

On that day, April 16th, the insured deposited the sum of $30.00 in the Merchants' & Planters' National Bank of Gaffney, and sent his check, on that bank, to the general agent for $30.00.

The agent gave the insured a receipt on a form receipt of the company, termed a "temporary receipt only," for the $30.00 paid by the insured, the receipt carrying the provision that the "reinstatement" was "to be effective from this date provided the above amount is in full payment of arrears of premiums with interest and provided the company shall be satisfied that on this date the applicant is eligible for reinstatement of the policy as a risk of the same class as when

the policy was issued under its rules for reinstatement." The receipt also stated, in effect, that if the company declined to reinstate the policy, the consideration would be returned.

In the same transaction of April 16th with the agent, the insured delivered to her his application for reinstatement, answering clearly numerous questions as to his health and physical condition, all of which indicated that the insured was in good health and an "insurable risk." On this application, at some later date, which does not appear in the transcript, the general agent unreservedly recommended the reinstatement of the policy.

On May 18, 1932, the general agent, by letter, acknowledged receipt to the insured of the payment of $30.00, and informed him that the amount was being held in suspense, subject to his order, pending the company's decision in the matter of reinstatement of the policy. But on the very next day, May 19th, the general agent deposited the check of the insured for the $30.00 to the credit of the insurance company in the National Loan & Exchange Bank of Chester, and the check was paid by the Gaffney bank in due course.

On June 8, 1932, the general agent wrote the insured that the company, for the purpose of giving further consideration to his application for reinstatement, requested that it be furnished with a detailed statement as to the occupational duties and finances of the insured, a form of the company for the giving of the requested information being inclosed. Nothing whatever was said in this letter about a medical examination.

The reply of the insured to the letter of June 8th does not appear in the record, but he evidently did respond thereto and gave the requested information, for, on June 11th, the general agent acknowledged the receipt by him of a letter from the insured of the 9th of June, "furnishing us with the information requested," and stating that the same was being forwarded to the company for the necessary attention.

A few days prior to his death, about June 18th, the insured went on a visit to his son in Charlotte, N. C. In that

city, very suddenly, and without any known previous illness, he died on June 23d.

According to the evidence of the appellant, its general agent, on June 18th, wrote a letter to the insured, which was addressed to him to Gaffney, telling him that it would be necessary, in the reinstatement of the policy, for him to undergo a medical examination. A proper form for the purpose was inclosed with the letter, and the insured was directed to have that examination by the company's regular examiner in Gaffney. He was notified therein that, upon return of the form, in accordance with instructions, the application for reinstatement would be given further attention. At the time of the writing of this letter and its receipt in Gaffney, the insured was in Charlotte. According to the testimony of his wife, the respondent, who received his mail in Gaffney, this letter was never received by the insured. So far as the record before us discloses, the request for a medical examination contained in this letter was the first time the appellant advised the insured, or endeavored to advise him, that a medical examination would be necessary before the policy could be reinstated.

On June 24th, the day following the death of the insured, the general agent addressed him a letter to Gaffney, asking that he refer to the former letter of the 18th, and comply with the request that the "completed medical examination" be sent in, so that the company might give the application for reinstatement further consideration.

The $30.00 on the premium, sent by the check of the insured to the general agent of the appellant, were never returned to the insured. No offer to return was made until after his death. For over two months, the check and the cash proceeds thereof were in the hands of the insurance company.

The appellant says that it was error for the Court to admit the testimony of the respondent, Mrs. McGuinn, and her daughter, Mrs. Jesse Smith, relating

to the conversations of the local agent of the insurance company and the insured, at the time of the arrangement for the payment of the $30.00 upon the premium account, and the testimony as to the alleged agreement at that time, that, upon the payment of that sum of money, the policy would be good and no medical examination would be necessary. It is urged that such testimony not only tended to vary and contradict the terms of the receipt given by the agent to the insured, and the terms of the application for reinstatement, signed by the insured, but that it also tended to contradict a provision of the policy to the effect that none of its conditions or terms could be waived except by certain executive officers of the company, named therein, which "executive officers" did not include the local agent or the general agent.

We think the testimony was clearly admissible. The soliciting agent of a life insurance company can waive a stipulation in the policy of insurance that waiver may be made only by an executive officer of the company. See *Fender v. New York Life Insurance Co.*, 158 S. C., 331, 155 S. E., 577, and *Gandy v. Insurance Co.*, 52 S. C., 224, 29 S. E., 655.

It is an elementary principle of law that a receipt for money may always be explained. Waiver of the forfeiture of an insurance contract, on the ground of nonpayment of the premiums, is, generally, proved by parol evidence. Oftentimes, no other kind of evidence is available for that purpose. In numerous cases, such evidence has been admitted. See the following recently decided by this Court: *Fender v. Insurance Co.*, supra; *Reynolds v. Life & Casualty Co. of Tennessee*, 166 S. C., 214, 164 S. E., 602; *Thomason v. Commonwealth Life Insurance Co.*, 168 S. C., 435, 167 S. E., 684; and *Gilreath v. Security Life & Trust Co.*, 170 S. C., 309, 170 S. E., 445. Moreover, in the case at bar, there were very strong inferences, deducible from the evidence, that the local agent, who had the alleged conversations with the insured, and made with him the alleged agreement as to

the reinstatement in full force of the policy, had authority to act especially for the insurance company in the transaction as to reviving the policy. A copy of one of the letters from the general agent to the insured, offering very liberal terms for the purpose of keeping the policy alive, was sent to the local agent by the general agent. The part payment of $30.00 on the premium was sent by the insured to the general agent at the direction of the local agent. The check for the money was received by the general agent, and the amount was deposited by him to the credit of the insurance company.

The evidence in the case was such as to require its submission to the jury, and the trial Judge committed no error in refusing the appellant's motion for a directed verdict, as it now contends. The representations of the agent, as testified to by the respondent and her witness, to which we have heretofore adverted, the letters written to the insured by the general agent, the long delayed failure to ask for a medical examination after the application for reinstatement had been sent in, the long time which the company held the money of the insured, under the alleged agreement to restore his policy in full force, without any offer to return it, were circumstances which made it necessary for the jury to determine whether or not there had been a waiver of the incurred forfeiture on the part of the appellant. See *Thomason v. Insurance Co., supra; Gilreath v. Security Life & Trust Co., supra; Harvey v. Insurance Co.,* 165 S. C., 427, 164 S. E., 6; *Stanton v. Insurance Co.,* 137 S. C., 396, 135 S. E., 367; and *Cope v. Insurance Co.,* 134 S. C., 532, 133 S. E., 440.

The sixth, seventh, and eight exceptions, included in the fourth question presented, make complaint as to the trial Judge's instructions in his charge to the jury on the matter of "waiver." From all that was said on that particular subject, the exceptions point to the following excerpts as being erroneous:

"Now, what is waiver? Waiver is the voluntary relinquishment of a known right. What was necessary then for the insurance company to do to waive its rights when Mr. McGuinn did not pay the insurance premiums under the terms of the policy? First, they must have known that they had that right; secondly, knowing they had that right, they voluntarily elected to pass that right up; to relinquish it; not stand on it, with the view of keeping the policy alive, just the same as if there had been no lapse. If they did that; if it performed any acts or engaged in any conduct whereby they led Mr. McGuinn to feel that he was still insured, that he had rights under the policy; lured him into a feeling of assurance or security, had he died in that state of mind, feeling that, by their acts, their conduct, their assurances, that he was still an insured man, if those were the facts at the time of his death, then the insurance company is liable.
*   *   *

"There are disputed questions here with reference to the terms and conditions under which this instrument was signed, and under which this check was issued; and I am submitting to you these papers, this check, this receipt and this application, so that you may consider them, the circumstances under which they were issued, the purposes for which they were issued, to determine whether or not the insurance company is resting upon its right to declare a forfeiture on this policy when Mr. McGuinn failed to pay the premium, or whether or not they waived their right to stand upon the forfeiture, and led Mr. McGuinn to go on feeling that he was insured; performed acts which led him to feel that he was still an insured man.   *   *   *

"Even though the policy was lapsed, the insurance company knowing it had a right to stand on the lapse, and, while knowing it had that right, voluntarily relinquished that right, and, by their conduct, led Mr. McGuinn to feel that he was still insured under the policy, and died in that state of mind. If she has shown you that by the greater weight of the testi-

mony, she is entitled to recover; if she has failed to do that, she is not entitled to recover."

Taking all the instructions as to waiver, contained in the charge, into due consideration, which we are bound to do in considering alleged errors as to a charge to a jury, we find no reversible error as to the instructions on waiver. The particular objection made by the appellant, that "it was not a question of how the insured felt at the time of his death, but what were his contractual rights," has been recently answered by this Court in the case of *Allen v. Jefferson Standard Life Insurance Co.*, 139 S. C., 41, 137 S. E., 214, 216, when Mr. Justice Stabler for this Court, where the facts of the case were very much similar to those of this case, used this language:

"The question of estoppel was also properly submitted to the jury. If the company's course of action in the matter was such as to lead the insured honestly to believe, as the testimony tended to show, that the sending of the note, the check, and the application (except part II) for reinstatement would operate to prevent forfeiture of the policy, and he acted in conformity thereto, the company would be estopped to claim forfeiture under the provisions of the policy. *Harvey v. Insurance Co.*, 131 S. C., 405; 127 S. E., 836."

The third question charges error of law on the part of the presiding Judge in directing the jury, in the event they found a verdict for the respondent, to simply say, "we find for the plaintiff," and telling them that later he would enter proper judgment by making the calculations necessary to be made, relieving the jury in the matter of calculations and computations. Nowhere in the record does it appear that the appellant, during the trial, objected to the course pursued, about which complaint is now made. On the contrary, in the "order and judgment" made by the trial Judge, after the jury had returned its verdict, this statement from the Judge appears:

"After the close of all testimony and argument of counsel,

the issues in the case were submitted to the jury under instructions from the Court, and inasmuch as there were certain equities to be adjusted in stating the account between the plaintiff and defendant, *by agreement of counsel* the jury were instructed that if they should find the policy sued on to be in force, they should simply write a verdict 'we find for the plaintiff', or if they should find that the policy is not in force, the verdict should be 'we find for the defendant'." (Italics ours.)

In view of the agreement on the part of counsel, we do not see how the appellant may now contend that the procedure adopted was erroneous. We may add that, even if no agreement had been made, we think the trial Judge very properly adopted the method which he pursued in aiding the jury in the matter of rendering a verdict, proper in form. It appears to have been conceded that if the respondent was entitled to a verdict in her favor, the amount of the balance due on the promissory note of the insured to the company, the interest thereon, the balance due on the premium, and the interest on that amount, should be deducted from the total amount of the insurance and the interest on that sum. There were necessarily many calculations to be made. There is no complaint here by the appellant that the calculations made by the Judge were not correct or as to the net amount fixed by him in his order of judgment, based on the jury's verdict.

All the exceptions are overruled, and the judgment below is affirmed.

MESSRS. JUSTICES STABLER, CARTER and BONHAM and MR. ACTING ASSOCIATE JUSTICE W. C. COTHRAN concur

MR. JUSTICE BONHAM (concurring) : I am constrained by the cases cited in the opinion to concur in it. But I do not wish to be understood as concurring wholly in the doctrine of waiver as therein announced. I think the defendant's actions thereabout were within its rights under the terms of the policy and the receipt given the insured.