### 10493

McLAURIN v. MUTUAL LIFE INSURANCE COMPANY OF NEW YORK.

(104 S. E. 327.)

1. EVIDENCE—COMMON KNOWLEDGE THAT ONE MAY BE MISTAKEN AS TO HIS HEALTH.—It is common knowledge that many persons think they are in good health when they are not, and many others think they are in bad health when they are not.

2. INSURANCE—WHETHER INSURED WAS IN "GOOD HEALTH" HELD FOR THE JURY.—In an action on an insurance policy, wherein the defense was presented that insured was not in good health at the time of the payment of the first premium and delivery of the policy, evidence respecting the development of a cancerous growth soon thereafter *held* not, as a matter of law, to indicate that insured was not at that time in good health; "good health" being a generic expression, resting mostly in opinion.

3. INSURANCE—POLICY PROVISION HELD NOT TO DEPRIVE AGENT OF DISCRETION TO REFUSE DELIVERY BECAUSE OF HEALTH.—That an insurance policy provides that only certain officials of the company may make, modify, or discharge contracts, or waive any of the company's

rights, *held* not to deprive the agent of discretion in refusing to deliver a policy, or to accept the premium, when in his opinion insured was not at that time in good health, and such decision of the agent became binding upon the company.

4. Insurance—Mere Fact of Ill Health at Time of First Premium Held No Defense.—Where an insurance policy required the first premium to be paid during the good health of insured, recovery on the policy could not be avoided merely because insured was not in fact at that time in good health, regardless of insured's knowledge thereof.

Before Moore, J., Marlboro, Spring term, 1919.   Affirmed.

Action by John B. McLaurin, as Administrator of the Estate of Sue S. McLeod, against Mutual Life Insurance Company of New York, on policy of life insurance.

From judgment for plaintiff, the defendant appeals.

*Messrs. Rutledge & Hyde, Willcox & Willcox* and *Townsend & Rogers,* for appellant, cite: *In this case no conscious fraud is charged and no breach of warranty alleged, differing from.*   88 S. C. 31.   *Misrepresentation in application made innocently of a fact peculiarly within applicant's knowledge will be held a fraudulent representation if it turns our to be untrue*: 112 S. C. 139; 98 S. E. 424.   *Plaintiff assumes burden of proving waiver*: 83 S. C. 262.   *Unless agent before delivery of policy knew of some fact, the existence of which would render policy void, stipulation is binding:* Cooley Briefs on Insurance, vol. III, 2526; 50 Sou. 73   *Allegations in pleadings as to time, quantity, value, etc., need not be proven with precision*: Greenleaf Evidence, 16th Ed., vol. I, 312; 71 U. S. 642; 18 L. Ed. 309; 163 U. S. 468; 41 L. Ed. 230.   *Stipulation in contract that soliciting agent had no power to waive company's rights is binding.* 216 U. S. 311; 54 L. Ed. 493; 108 S. C. 137.   *Limitation of agent's authority appears in application and forms part of the contract itself:* 77 S. C. 187.   *Upon proof of forfeiture by defendant, burden is on plaintiff to show waiver:*

83 S. C. 262; 88 S. C. 221. *Testimony heard was insufficient to constitute waiver:* 107 S. C. 291. *Testimony as to offer to return policy was inadmissible, situation here differing from 79 S. C. 532. Testimony tending to show custom and usage of insurance companies in reference to accepting a party having a tendency to cancer as an insurable risk was competent:* Cyc. 1099; Cyc. 1102; 111 S. C. 1; 72 Fed. 413. *No conflict of this position with 106 S. C. 419. In view of positive testimony as to existence of· cancer at time of application, jury should not have been permitted to consider failure of examining physician to detect the trouble:* 95 S. C. 196; 111 S. C. 399. *Applicant being in bad health at time of delivery of policy, there was failure of consideration:* 105 S. C. 373.

*Messrs. McColl & Stevenson,* for respondent, cite : *Examination of insured by company's physician is some evidence that disease did not exist or that company waived it:* 95 S. C. 199; 106 S. C. 423; 112 S. C. 139; 99 S. E. 436. *Agents competent to bind insurance company:* 1 Civil Code 1912, sec. 2712. *Knowledge of agent is the knowledge of principal:* 75 S. C. 263; 75 S. C. 323.

October 11, 1920.

The opinion of the Court was delivered by Mr. Justice Gage.

The plaintiff had a verdict against the defendant for $10,000 in an action upon a contract of life insurance betwixt Mrs. Sue S. McLeod, now deceased, and the defendant company, and from a judgment entered thereupon the defendant has appealed.

There are 10 exceptions, but not nearly so many real issues, and the burden of them all is that the Court ought to have directed a verdict for the defendant. So the issue is: Does the testimony lead to only one reasonable conclusion, and that for the defendant?

The company by its letter declined payment of the policy: (1) Because there was no insurance in force, for the reason that the first premium had not been paid during the good health of Mrs. McLeod; and (2) because the applicant made untrue statements in the application concerning her health. The same defenses were pleaded by answer.

In the oral argument at the bar, the counsel for the company frankly said:

"I am not basing my case on whether she knew the fact of bad health. That circumstance is immaterial."

And on the same occasion counsel declared that he made no charge of fraud; that his sole contention was and is that, if Mrs. McLeod was not in good health when the policy was delivered to her, then the contract of insurance never became effective; and well may the admission have been _made, for the insured took the policy after much importunity at the hands of the agents, and she offered more than once to return it to the company, and the proffer was refused.

So much fetches us to a consideration of the contract of insurance. That transaction is constituted, as is usual, of the application for insurance and the policy of insurance; and a part of the application is the answer of the applicant to the company's medical examiner, 'and we assume, also, the report of the medical examiner. The relevant part of these documents are two stipulations in the application, to wit:

"The proposed policy shall not take effect (1) unless and until the first premium shall have been paid during my continuance in good health; and (2) unless, also, the policy shall have been delivered to and received by me during my continuance in good health." (The numerals are supplied.)

That stipulation is the chief citadel of the defense. And again:

"That only the president, vice president, a second vice president, a secretary, or the treasurer of the company (1) can make, modify, or discharge contracts; or (2) waive

any of the company's rights or requirements, and that none of these acts can be done by the agent taking the application." (The numerals are supplied.)

That stipulation is the outer wall of the citadel, and is written to exclude proof of waiver and estoppel charged by the plaintiff to have been exercised by the company's agents. These two stipulations we shall presently consider.

The rock of offense' which has been pleaded to make operative the first stipulation is an answer made by the applicant to the medical examiner. That officer inquired, "Are you in good health?" and to that the applicant answered, "Yes." So much we shall instantly consider.

The applicant was solicited more than a year before application. The application is dated July 1, 1914; the statement to the medical examiner is dated July 7, 1914; the medical examiner's report is dated July 11, 1914; the policy is dated July 11, 1914; the insured was operated on for cancer at a Columbia hospital about the 1st of August, 1914; she died of cancer at Baltimore in August, 1915. It is not reasonably certain from the testimony (1) at what period of time the first premium was paid, and (2) at what period of time the policy was delivered.

Payment was first accepted in the form of a 12-months note of the applicant; the date of that note is uncertain; some 4 or 5 weeks thereafter the 12-months note was exchanged for a six-months note; the soliciting agent testified that "the only dates I can remember are the dates of the policy;" the testimony tends to show the first note for the initial premium was made and accepted on July 11th, though there is testimony to sustain a contrary view.

The testimony is equally uncertain about the period of time when the policy was delivered. At best delivery is a technical word; but the testimony tends to show that the policy was put into Mrs. McLeod's hands at the period of time when she signed the 12-months note, for Evans, the soliciting agent, testified that "I collected the premium the

day I delivered the policy." The testimony then tends to show that the first·premium was paid and the policy was delivered to Mrs. McLeod on July 11, 1914, or thereabouts.

If so much be reasonably true then was the applicant in good health ·at that period of time? "Good health" is a generic expression; at most it rests in opinion; its existence is generally too elusive, except upon the verdict of a jury, to hang substantial· rights upon. ·Experts sometimes disagree (1) upon whether certain pathological conditions exist in the body, and (2) whether an inference of good or bad health· is to be drawn from them.

The applicant thought she was in good health, for she so answered, and it is conceded she answered honestly; the medical examiner so thought, and he made a "careful inquiry and thorough physical examination" of every part of the body, and he "without reservation recommended the applicant for·insurance," and he thought her "a perfect specimen of health." Mr. Evans and Mr. Hendley, the soliciting agents, were of like opinion.

It is common knowledge that many persons think they are in good health·when they are not, and many others think they are in bad health when·they are not. It would shake confidence in contracts of insurance, and do hurt to the lawful business of insurance, to hold that if, as a matter of fact, the applicant was at the instant of effective insurance not in "good health," without the present knowledge of such fact by anybody,· then the contract would not be operative.

The only testimony suggested by the defendant to prove the fact of bad health on or about the 11th July is that of Dr. Napier, a country doctor and friend of Mrs. LcLeod. The testimony does not fix the age of that witness, except by inference, and the inference is he must be beyond 60 years of age. There is no more uncertain circumstance in the testimony of witnesses than time. Dr. Napier saw Mrs. McLeod twice—first, at her sister's home; and, second, at

the Alford funeral. The date of the first interview he could not fix; the second interview he fixed approximately 6 weeks after the first; and the second interview is definitely fixed—July 28, 1914.

At the first interview the doctor examined Mrs. McLeod's breast and discovered a movable lump, which he could not pronounce cancer, but which he advised to be exercised. He did not suggest cancer to the lady, and he did not diagnose the malady as cancer. Dr. Guerry, who removed the cancer early in August, 1914, declined to say at what date theretofore a cancerous condition was developed; he said the period of development was indefinite—that some tumors grew faster than others.

Upon this state of facts a Court would not be warranted to conclude as the only inference to be drawn that Mrs. McLeod had a cancerous growth early in July, and was, therefore, not in good health.

We come now to the aforementioned outer wall defense, somewhat involved with that just considered. It is true that the soliciting agents, Evans and Hendley, had no power, after delivery of the policy and payment of the first premium, to modify or discharge the contract, or to waive any of the company's rights or requirements. That was the contract of the parties before set out.

But the facts do not make such a case. The general agent at Columbia, Hyatt by name, returned the 12-months note to Evans, with instructions to get in the place of it a 6-months note. Evans kept the 12-months note more than a month, in which interim both he and Hendley saw Mrs. McLeod, and made diligent inquiry about her health, and Evans talked with Hyatt about the situation. Both the 12-months and the 6-months notes, the witnesses say, were Hyatt's; and the company has no knowledge of or interest in them. But there is no testimony that the company had received the first premium through any other medium than the notes. When the 6-months note was carried to Mrs.

McLeod to execute, she proffered three times to return the policy. The 6-months note was to pay the premium, and the issue was presented to Evans and Hendley, and to Hyatt, too, whether they should accept that note or take back the policy, and they made choice, with knowledge of Mrs. McLeod's at least doubtful good health.

The power of the agents went to that extent. Evans testified that his business was to deliver the policy and collect the premium, and that if a policy should be sent to him, and the applicant should then appear not to be a good risk, he would not make delivery of the policy, and that was why he held the 6-months note for 4 weeks. Hendley testified that the company would not accept a certain class of risks, if known to the agent; and he also testified that the agents had 60 days after an examination in which to deliver or not deliver a policy.

So much comes from the necessity of the case; the president, the vice president, and the secretary cannot solicit, or collect, or deliver; they must commit that to others, and along with it the discretions we have adverted to.

3   It is true some of the witnesses said that the doctors alone were judges of an applicant's good health; but Evans and Hendley did not say so, but the contrary. The power in the local agent to withhold the policy involves the power to deliver it; there is no escape from that conclusion.

But the appellant says, even though the local agent should have concluded that the applicant was in good health, yet, if that fact be the contrary, then the policy never operated. The parties intended to make a contract, and that involved the doing of everything necessary to carry it into operation, to wit, the acceptance of the applicant as a person in good health. They never intended to leave open that one essential element of the contract, when the parties dealt fairly one with the other. It is plain, therefore, that upon the facts it is not necessarily a case of waiver or of estoppel, but a case where the local agents, in the exercise of the powers lodged

in them, accepted the premium and delivered the policy. That act binds their principal, the defendant.

We utterly reject as unsound the novel suggestion of the appellant's counsel that in a case like this a sound price warrants a sound article, and that other analogous suggestion that, because a warrantee in a land deed may hold the grantor liable on the warranty, even though the warrantee knew of the defect in title before he accepted the deed, so may the defendant company hold the insured to the words of the contract, even though the company knew of the existence of bad health when it wrote the contract of insurance. To so much an old adage is a sufficient answer, that "this is a gray horse of another color."

The other points in the case are minor; those which we have decided were the ones present at the bar; the others are drawn into them, and are not sufficient, if well taken, even to reverse the judgment; a consideration of them would unduly prolong an opinion already too long. And we have set our eyes on this case, and not on others. None of our decisions are to the contrary.

The judgment is affirmed.