13462

ROBERTS v. SOVEREIGN CAMP, WOODMEN OF THE WORLD

(164 S. E., 893)

*Messrs. Huff & Huff* and *R. E. Babb,* for appellant,

*Mr. O. L. Long,* for respondent.

August 2, 1932.

The opinion of the Court was delivered by MR. CHIEF JUSTICE BLEASE.

The respondent, Sovereign Camp of the Woodmen of the World, is a fraternal beneficiary association, with au-

thority to insure the lives of its members, and has subordinate camps.

This suit by the appellant against the respondent, tried in the Court of Common Pleas for Laurens County, was brought to recover the amount claimed by her as beneficiary of an insurance policy issued by the respondent on the life of Alfora A. Roberts, husband of the appellant, in the sum of $1,000.00.

Payment of the policy was refused by the respondent on the ground that the insured had failed to comply with the constitution and by-laws of the Sovereign Camp; that the Sovereign Camp received no dues from the insured for the month of May, 1929; that the insured was in arrears with his dues; that his policy lapsed, and the beneficiary was not entitled to any benefits under the policy.

A motion for a directed verdict in favor of the respondent on the grounds mentioned was granted by the trial Judge, Hon. C. C. Featherstone, who said he was "loath to direct a verdict," but under his view of the law, on consideration of the evidence, he was bound to do so.

The appeal here is from the stated result of the cause in the lower Court.

It appears from the testimony that Roberts, a member of Cotton Wood Camp No. 725, located at Laurens, had a policy, or benefit certificate, in the sum of $1,000.00, payable to the appellant, which was issued by the Sovereign Camp on September 8, 1913, under the provision that monthly dues of $1.00 should be paid by the insured to the Sovereign Camp; that default in the payment of dues, or any increase of dues, should be cause for suspension, and, in such case, the policy should not be of force during the period of suspension.

Under a plan adopted about December 31, 1919, the monthly dues payable to the Sovereign Camp were increased to $2.35. The choice was given, however, to the holder of the policy to continue payment at the former rate, with the

difference between the old and new rates to be charged as a lien, bearing interest, against the certificate, to be deducted from the face of the same when it should mature.

The plan last mentioned continued in effect until April 1. 1929, when the Sovereign Camp formulated a new proposal to the effect that the certificates then outstanding, with liens chargeable against them, should be exchanged for new certificates with increased rates payable thereon, which, as it was represented, would not be subject to any deduction on account of principal or interest charges constituting a lien against the old certificate, but would be good for full face value, besides providing additional benefits and privileges that the original certificate did not carry.

A special representative of the Sovereign Camp was sent out from the home office, at Omaha, Nebraska, to each local camp to explain the policy exchange proposition to the members of the subordinate camps. One of the representatives of the Sovereign Camp, Mr. Charles G. Moore, on April 13, 1929, visited the home of Roberts, who had been sick for several years, confined to his home practically all the time, and much of the time in bed. During the period of the extended illness of Roberts, his dues had been paid by his local camp, which, by a resolution regularly adopted at a meeting of the camp, had authorized its clerk to make payment of the monthly dues of $1.00, which had to be remitted to the Sovereign Camp, under the old plan of permitting the balances of dues to be charged as a lien against the certificate.

Mr. Moore persuaded Roberts, the insured, to agreeing, conditionally, to the proposed exchange of the old certificate, on which the payments were being kept up by the local camp, for the new certificate, which would not be subject to any deduction, but which would require payment of increased monthly dues, and the payment for which increased dues the subordinate camp had not made any provision. In the arrangement for the exchange of certificates, Mrs. Rob-

erts, the beneficiary, represented her husband in the discussion thereabout. Concerning the circumstances under which the exchange was made, Mrs. Roberts testified as follows:

"Q. What was the condition under which it had to be changed? A. He claimed that it was a state law and that it had to be.

"Q. Did you have to pay him any money? A. Yes, sir. I paid him Two Dollars and Eighty-four Cents. * * *

"Q. Were you willing to change the policy right off? A. I told him if it was satisfactory with the camp, if they were willing to keep his dues paid up as they had been I was willing to change the policy. He said he would go and see Mr. Montgomery (the clerk), and see if he was willing to do that; and if they were willing to keep it up as they had been, I told him to change the policy, but if not to send the old one back. He said he would.

"Q. If it was not all right for Mr. Montgomery to keep it up, to give you the old policy back? A. Yes, sir. * * *

"Q. Why were you not willing to pay the increased premium? A. I was not able.

"Q. If he had not made the proposition that he would have the local camp to take care of the increased premium would you have swapped policies? A. No, sir. * * *

"Q. Did they send the old policy back? A. No, sir. They sent me a new policy.

"Q. How did it come to you? A. It came by mail. * * *

"Q. At the time your husband died did you know his dues for the month of May had not been paid? A. No, sir.

"Q. Did Mr. Montgomery notify you that they would not pay them? A. No, sir. They had not notified me."

It was shown that the insured died June 18, 1929, just about two months after the visit of the special representative, and at a time when only one month's dues were in arrears, if there were arrears, under the law.

The clerk of the subordinate camp, Mr. Montgomery, testified that he told the special representative of the Sov-

ereign Camp that the local camp was carrying Roberts, and how long it had carried him; also that he agreed on the part of the subordinate camp to continue paying the $1.00 (or $1.10) per month, but he made no payment to the Sovereign Camp after the April, 1929, payment, because the dues for the insurance had been increased under the last plan, and he was looking to the insured to pay the difference (as we understand, $1.74 monthly dues) that it was necessary to remit under the increased rates for the new certificate.

The rulings of the trial Judge to the effect that, under our statutes, the decisions of this Court, and the constitution and by-laws of the Sovereign Camp, the subordinate camp is only the agent of the Sovereign Camp for the purpose of collecting and sending in the dues, were correct. See Section 4160, Civil Code of 1922 (Section 8047, Code of 1932) ; *Sternheimer v. Order of United Commercial Travelers,* 107 S. C., 291, 93 S. E., 8; *Crumley v. Sovereign Camp,* 102 S. C., 386, 86 S. E., 954, Ann. Cas., 1916-D, 594; *Watson v. Sovereign Camp,* 116 S. C., 360, 108 S. E., 145.

Even an agreement on the part of the subordinate camp to make payment of the dues of a member out of the camp funds will not of itself operate to relieve a default in the payment of the member's dues—particularly in view of the provision of Section 97 (b) of the constitution and by-laws, to the effect that "no Camp shall pay the installment of assessment of any member unless the same is actually transferred from the Camp's funds into the hands of the Clerk on or before the last day of the month in which such installment of assessment is due and payable by the member, and the Clerk shall enter such payment upon his record, showing the date it was paid by the Camp."

The circumstances, however, under the testimony of Mrs. Roberts, the beneficiary, present an entirely different ground of recovery. According to her testimony, the exchange of

the old certificate was based on the condition that the subordinate camp should agree to take care of the increased dues and keep them up, and, if it was not all right for the clerk of the subordinate camp to keep up the dues on the new certificate, then the old certificate would be returned. In addition, Mrs. Roberts testified that she was not able to pay the increased dues, and had to depend on the subordinate camp to keep up the payments; hence her insistence that the old certificate was to be returned, unless the subordinate camp agreed to keep up the payments on the new certificate.

The truth of the evidence presented, and all inferences most favorable to the appellant therefrom, must, at least, be assumed in consideration of the motion for a directed verdict in favor of the respondent. That legal principle has been so long well recognized that it is a waste of time to cite authority to sustain it.

In our opinion, it is a permissible inference from the testimony above referred to that there was no such meeting of the minds in regard to the exchange of the certificates—the old for the new—as to constitute a contract between the parties completing the transaction of exchange. Mr. Chief Justice Watts, for this Court, in *Alexander v. Kerhulas,* 151 S. C., 354, 149 S. E., 12, 13, said: "The law has always recognized conditional deliveries of papers, * * * and it has invariably been held that the intention of the parties controlled as to whether a delivery was absolute or conditional." Likewise, it was said by Mr. Justice Marion, in *Powers v. Rawls,* 119 S. C., 134, 112 S. E., 78, 85, that "intention has been called the essence of delivery." See, also, *Carolina National Bank v. Wilson,* 153 S. C., 251, 150 S. E., 765.

There is also at least a permissible inference from the testimony of Mr. Montgomery, the clerk of the subordinate camp, that the camp would have continued to take care of the smaller amount of dues payable

on the old certificate, and that the default in the payment of the dues, resulting in the suspension of Roberts, would not have occurred except for the act of the Sovereign Camp, through its special representative, in endeavoring to persuade the insured into the proposed exchange of his old certificate for the new one, which required the payment of increased dues. The element of estoppel, characterized as "conduct of the party estopped which misled" (*Harvey v. Philadelphia Life Insurance Co.*, 131 S. C., 405, 127 S. E., 836, 838), enters, therefore, into the case, to be considered in connection with the testimony tending to show that the condition on which the exchange of the certificates was made failed of compliance.

The appellant, in our opinion, was entitled to have the suggested theory of the case, the right of recovery on the old certificate, subject to deduction of the amount of any lien indebtedness existing thereon, submitted to the jury.

Anything we have said with reference to the evidence as a whole, or any portion thereof, is not to be understood as expressing an opinion on our part as to the truth of such evidence, or its value, if true. Our references to the evidence, adduced in the trial, have been for the sole purpose of showing the permissible inferences which might be drawn therefrom by a jury.

The judgment of this Court is that the judgment of the lower Court in favor of the respondent, based on the directed verdict, is reversed, and the cause remanded to that Court for a new trial.

MESSRS. JUSTICES STABLER and CARTER, and CIRCUIT JUDGE G. B. GREENE, ACTING ASSOCIATE JUSTICE, concur.

MR. JUSTICE BONHAM concurs in result.