13685

HARMAN v. BANKERS' RESERVE LIFE CO.

(170 S. E., 451)

*Messrs. Lide & Felder* and *C. E. Summers,* for appellant,

*Messrs. W. C. Wolfe* and *G. K. Rich,* for respondent,

August 28, 1933.

The opinion of the Court was delivered by Mr. Justice Stabler.

The facts of this case are few and in the main undisputed. On November 8, 1928, the defendant company insured the life of one Walter D. Harman, Sr., in the sum of $2,500.00

the plaintiff, his wife, being named as beneficiary. About two weeks before, the company had insured the lives of three of Harman's minor children; two of the policies being dated the 23rd and one the 24th of October. The policy on the life of Harman contained a provision that the insured should pay an annual premium of $85.94 on or before November 8 of each year; a grace period of one month being allowed. As Harman was unable to pay the second premium on any of the policies, the company agreed, on or about December 4, to accept his note therefor. In accordance with this arrangement, he executed a note as of October 30, 1929, for the sum of $152.03, this amount being made up of the total premiums, $149.05, due on the four policies, plus $2.98 interest. The note was made payable four months after its date, and stated that it was "given in (whole or part) payment of the annual premium due" on the policies therein designated, and also contained the following stipulation: "All claims to further insurance thereunder and all benefits whatever which full payment in cash of said premium would have secured shall be immediately void and forfeited to The Bankers' Reserve Life Company, if this note shall not be paid at maturity, except as otherwise provided in the contract itself."

Neither the note nor the second premium, nor any part thereof, was ever paid. Harman died on May 29, 1930, and the plaintiff brought this action on July 19, 1932, to collect the amount of the insurance on the life of the deceased. On trial of the case a motion was duly made by the defendant for a directed verdict on the ground that the evidence showed that the policy in issue lapsed on February 28, 1930, the agreed due date of the note, and then became null and void for the nonpayment of the premium. The trial Judge denied the motion, stating as his ground of refusal that there was some evidence of waiver of the forfeiture claimed, which made a question for the jury.

The defendant, after February 28 and before and after the death of Harman on May 29, wrote him several letters in

regard to the insurance; and the decision of the question of waiver turned upon the meaning of the language used by the company in these letters, which Judge Rice held to be ambiguous. In his charge he told the jury that if the company, although the insurance had lapsed, went ahead and demanded of Harman payment of premium sufficient to carry his policy to June 7, then it waived the forfeiture insofar as that policy was concerned, and that was the point in the case. A verdict was rendered in favor of the plaintiff for the whole amount asked for, and the defendant excepts and brings error.

The only question, as we have indicated, submitted to the jury, and which we here decide, was whether there was a waiver by the company of the alleged forfeiture. Arguments of counsel, in the main, are directed to that point and its decision will be sufficient, under our view of the case, to dispose of the appeal.

Turning to the evidence we find that some time before February 28, 1930, the company mailed to Harman a note of warning that his note would be due on that date, and that it should be paid promptly in order to keep the insurance in force. On May 1, 1930, before the death of Harman, the company wrote a letter to him, in which it referred to the four policies by their respective numbers, and in which it advised him that he had permitted them to lapse and suggested that he make application for their reinstatement. It wrote him again on May 17 and on June 10 to the same effect. On June 27, it advised him that, as it seemed he had decided not to reinstate the policies, the company would not trouble him further. This letter contained the following:

"However, we feel that you should send us a remittance of $49.68 to cover the period over which we carried your risk on your life. This amount is a just obligation on your part, and you should feel it your duty to take care of it the same as any other debt which you may contract.

"We are not asking for the amount of the deferred premiums, but merely for the cost of carrying the risk on your lives

for the period from October 30, 1929, to February 28, 1930, when your policy lapsed. It is our hope that you will not destroy our faith in your good intentions and that we may receive your remittance of $49.68 at an early date."

On July 15, the defendant again wrote the insured about the four policies, stating that it was sorry that he had permitted them to stand lapsed on the company's books, and that it would gladly give him information concerning the steps necessary to reinstate them. This letter also contained the following: "In the meantime, please let us have your check for $49.68 covering the period we carried the risk on your life before your policy lapsed. We are sure you have unintentionally neglected to send this amount, which you of course understand is a just obligation on your part."

The total amount of the annual premiums on the four policies, as stated, was $149.05, one-third of which was $49.68. The appellant contends that when the quoted portions of the letters written by the company on June 27 and July 15, asking the insured to send it $49.68 to cover "the period we carried the risk on your life before your policy lapsed," are considered with other parts of the letters, the conclusion is inescapable that the company was referring to one-third of the second premium owing it on the four policies, such portion of the premium being meant to cover the time (from October 30, 1929, to February 28, 1930), the company had actually carried the policies for which it had received nothing. the position of the respondent is that, as the amount of the premium on the policy on the life of Harman himself was $85.90, which would be about $7.00 per month, it is evident the sum of $49.68 which the company demanded of the insured was intended by it to cover the period of about seven months from November 8, 1929, during which it had kept alive Harman's policy.

We have read with especial care the letters written by the company to the deceased, and think that more than one reasonable inference may be drawn from the language used. While it is true that Harman was acting in the matter not

only for himself but for his three minor children, and that the letters referred to all four policies by their respective numbers, it is also true—a fact well known to the company—that each of the policies was a separate risk and was on the life of a different person. Therefore, it is at least reasonably inferable that the language used in the company's letter of July 15, to the effect that Harman should remit $49.68 to cover "the period we carried the risk on your life before your policy lapsed," without mentioning any other risk or period, had reference only to the policy which it had issued on the life of Harman himself and to such portion of the premium on that policy as would cover the time that the company had carried it. Upon consideration of the entire record, we are of opinion that the Court committed no error in submitting the question to the jury.

The judgment of the Circuit Court is affirmed.

MR. CHIEF JUSTICE BLEASE and MR. JUSTICE CARTER concur.

MR. JUSTICE BONHAM dissents.

MR. JUSTICE BONHAM (dissenting) : I must dissent from the main opinion in this case for the reason that the letters which are relied on to show waiver by the insurance company are not, in my opinion, reasonably open to that interpretation. They are not ambiguous. They plainly show the intention of the company to urge upon the insured that he apply for reinstatement of the policies. And if the insured did not apply for reinstatement, that he should at least pay for the time the company had carried his policy before it lapsed. If there was a slight inaccuracy in stating this amount, it surely did not furnish proof of intention to waive the forfeiture of the policy by lapse for nonpayment of the premiums. To hold otherwise would establish so harsh a rule that insurance companies will hesitate to endeavor to aid the insured to keep their policies alive.

I think the motion by defendant for directed verdict in its behalf should have been granted.