14392

WELCH v. NEW YORK LIFE INS. CO.

(189 S. E., 809)

June, 1935.

*Messrs. Thomas, Lumpkin & Cain* and *M. P. Howell,* for appellant,

*Messrs. Jefferies & McLeod,* for respondent, ▮

December 7, 1936.

The opinion of the Court was delivered by Mr. C. J. Ramage, Acting Associate Justice.

This action was brought to recover both actual and punitive damages for the alleged wrongful and fraudulent refusal of the defendant to deliver to the plaintiff two single premium endowment policies in the face amount of $500.00 each, or to return to him $1,000.00, the amount of the premiums paid therefor to an agent of the company. The defendant admitted receipt of the application for the insurance, but alleged that Welch failed to pay to it the premiums, the settlement for which, as provided by the terms of the application and of the policies, could be made only by bank draft or certified check, and that the plaintiff had not employed either of these modes of payment. It therefore denied all liability.

On trial of the case, motions for a non-suit and for a directed verdict were refused, and the jury found for the plaintiff actual damages in the sum of $1,000.00, with interest, and $950.00 punitive damages. A new trial was thereafter refused, and the defendant appealed.

Some of the undisputed facts are as follows: Mary H. Olney, an agent of the defendant company, conferred with the plaintiff relative to the investment of certain moneys which he had received from the company in settlement of a death loss under a policy on the life of his son. Pursuant to such conference, the plaintiff, on October 1, 1933, executed an application for certain endowment policies; and on the following day, October 2d, there was paid to Mrs. Olney by the wife of the insured the sum of $1,000.00 in cash, representing the single premium on two such policies for $500.00 each. On October 19, 1933, Mrs. Welch also paid

Mrs. Olney $1,000.00 in cash, representing the premium on two additional endowment policies for $500 each, and Mrs. Olney duly issued her receipt therefor. One week thereafter, Mrs. Olney delivered the two policies for which the $1,000.00 premium was paid on October 2, 1933. There is no contention about this. But the other two policies, for which Mrs. Olney was paid the premium of $1,000.00 in cash on October 19, 1933, were never delivered. Mrs. Welch testified that when the matter was being investigated, Mrs. Olney had stated to her that she had deposited the $1,000.00 that she had received on October 19, and had subsequently withdrawn it and lost it.

We adopt, as a portion of our opinion, the decree of Judge Johnson refusing the motion for a new trial, and direct that it be incorporated in the permanent report of the case. The decision might well rest here, but owing to the importance of the matters involved, the writer will add some further discussion.

The real issue in the case is this: Was the question of waiver properly submitted to the jury? The answer to this is, yes.

The defense, as we have indicated, is the provision in the application and policy providing that payment of the premium should be made only by bank draft or certified check to the order of New York Life Insurance Company in exchange for its official receipt signed by one of the designated executive officers, and that none but an executive officer had the right to make or discharge contracts or to waive any of the company's rights or requirements. The record for appeal discloses, however, that the entire matter of buying the $2,000.00 worth of endowment policies was a transaction between the plaintiff and the defendant *represented by its agent, Mrs. Olney.* The plaintiff made both payments in cash to Mrs. Olney and took her receipt therefor. Two of the policies were actually delivered to the plaintiff by the company thus completing one-half of the transaction; both pay-

ments of the premium were made in the same manner. In view of these facts, it is urged by plaintiff that Judge Johnson committed no error in submitting the question of waiver to the jury.

Information that an agent had before the issuance of a policy is imputed to the principal and makes waiver of certain provisions of the policy a jury question. *Readen v. State Mutual Life Insurance Company,* 79 S. C., 526, 60 S. E., 1106. This was a case as to the health of the insured at the time the policy was issued.

Where insurance policy contained a provision that the policy should be void if the property insured was removed from the place where it was when the policy was issued, where property was removed to another place, the fact that the agent collected premiums with knowledge that the property had been moved made an issue for the jury on the matter of waiver. *Powell v. Continental Insurance Co.,* 97 S. Ct., 375, 81 S. E., 654.

Whether insurer, accepting payment of overdue premiums with interest without requiring proof of insurability, intended to waive forfeiture of life policy, held for jury, notwithstanding the insurer's agent did not know that insured was ill. *Harvey v. Jefferson Standard Life Ins. Co.,* 165 S. C., 427, 164 S. E., 6.

Payment of initial premium may be waived, which waiver may be implied from unconditional delivery of the policy. *Wright v. New England, etc., Ins. Co.,* 165 S. C., 190, 163 S. E., 133.

Waiver may be express or implied, *Farmers' & Merchants' Bank v. Peoples' First National Bank of Charleston,* 161 S. C., 286, 159 S. E., 617.

"Waiver has been defined to be an implied consent by a failure to object." 67 C. J., 307.

Waiver may be shown by a course of acts and conduct, and also by words or declarations, oral or written; and "may be inferred from circumstances." 67 C. J., 309.

As to Mrs. Olney's being the agent of the defendant, see Sections 1911, 7970 and 7971 of Code of 1932.

"The person or persons to whom payment of premiums may or must be made may be controlled by the provisions of the policy, but such provisions when for the benefit of the company may be waived by it, and payment to one apparently authorized to receive it may be good even where it was not made in conformity with the terms of the policy." 32 C. J., 1198.

In *Fender v. New York Life Insurance Co.*, 158 S. C., 331, 155 S. E., 577, it was held:

1. That a provision relating to health may be waived.

2. This may be done by soliciting agent though the policy stipulated that this could only be done by executive officer.

Any provision as to forfeiture in an insurance policy may be waived and also an insurer may waive the provision relating to the manner of waiver by an agent. *Gandy v. Orient Insurance Co.*, 52 S. C., 224, 29 S. E., 655.

Three important cases on the subject of waiver are: *Madden & Co. v. Phoenix Insurance Co.*, 70 S. C., 295, 49 S. E., 855; *McMillan & Son v. Insurance Company of North America*, 78 S. C., 433, 58 S. E., 1020, 1135; *Cobb & Seal Shoe Store v. Aetna Insurance Co.*, 78 S. C., 388, 58 S. E., 1099. These are all well known and have been reaffirmed time and again by this Court. This Court has held that a nonwaiver provision in a policy may be waived like any other provision.

The power of the local agent to withhold a policy involves the power to deliver it; there is no escape from that conclusion. *McLaurin v. Mutual Life Ins. Co.*, 115 S. C., 59, 104 S. E., 327.

Conditions precedent may be waived. *Fender v. New York Insurance Co.*, 158 S. C., 331, 338, 155 S. E., 577; *Rogers v. Atlantic Life Insurance Co.*, 135 S. C., 89,

133 S. E., 215, 45 A. L. R., 1172; *Jennings v. Cloverleaf Life & Casualty Co et al.,* 146 S. C., 41, 143 S. E., 668.

An insurance company may not set up forfeiture on account of facts known to the agent of the company to be existing at the time of the making of the contract. *Huestess v. South Atlantic Life Insurance Co.,* 88 S. C., 31, 70 S. E., 403.

The following cases are in point on the matter of waiver: *Galphin v. Pioneer Life Insurance Co.,* 157 S. C., 469, 154 S. E., 855; *Pearlstine v. Phoenix Insurance Co.,* 74 S. C., 246, 54 S. E., 372; *Gilreath v. Security Life & Trust Co.,* 170 S. C., 309, 170 S. E., 445; *Robert v. Sovereign Camp, W. O. W.,* 166 S. C., 393, 164 S. E., 893; *Tolbert v. Southern Mutual Life Insurance Co.,* 175 S. C., 338, 179 S. E., 308; *Edwards v. Grand Lodge K. P. of S. C.,* 166 S. C., 445, 165 S. E., 181; *Harman v. Bankers' Reserve Life Co.,* 170 S. C., 329, 170 S. E., 451; *Thomason v. Commonwealth Life Ins. Co.,* 168 S. C., 435, 167 S. E., 684; *Cope v. Jefferson Standard Life Ins. Co.,* 134 S. C., 532, 133 S. E., 440; *Clark et al. v. Southeastern Life Ins. Co.,* 101 S. C., 249, 85 S. E., 407; *Cauthen v. Hartford Life Ins. Co.,* 80 S. C., 264, 61 S. E., 428; *Webber v. Southern Life & Trust Co.,* 103 S. C., 284, 88 S. E., 124.

"Payment of the premium to an agent of the company is payment to the company, even if the agent fails to turn over to the company the premium received by him, and a notice printed on the back of a policy that payment to an agent will not be deemed valid unless a recipt signed by certain specified officers of the company is received at the time does not limit the rule." 32 C. J. 1132.

Mrs. Olney, a witness put up by the defendant, testified on the cross examination:

"Q. Mrs. Olney, how long have you been working for the New York Life Insurance Company? A. I have been working with the New York Life Insurance Company since February, 1922, if I am not mistaken.

"Q. And during that time you wrote a large amount of business? A. Yes, sir; for this section of the country.

"Q. And you collected cash and sent that cash in to the company in your business, did you not? A. Yes, sir; I did. * * *

"Q. But you received from Mrs. Welch two thousand dollars? A. Yes, sir.

"Q. And you did not deliver but one thousand dollars? A. No, sir; that was all. * * *

"Q. And she paid it to you as agent for the New York Life Insurance Company? A. Yes, sir."

The application was signed on Sunday, and an arrangement was made to go to the bank the next day and get the money; Mr. Olney carried Mrs. Welch in her car; and it was at the suggestion of Mrs. Olney that the amount was divided into two payments and that cash was used.

It appears from the testimony of Mrs. Olney that whatever was done was done by her and that she was the actor all the way through.

It has been held in a number of cases that an agent of an insurance company is a general agent in the sense of the statutes and cases in our State.

The appeal presents several other questions, but they are all properly disposed of by Judge Johnson in his order refusing a new trial.

All exceptions are overruled, and the judgment of the Circuit Court is affirmed.

MR. CHIEF JUSTICE STABLER and MR. JUSTICE CARTER concur.

MESSRS. JUSTICES BONHAM and BAKER dissent.

MR. JUSTICE BAKER (dissenting): The "Statement" in the Transcript of Record, briefly sets forth the issues, and we here reproduce so much thereof as is proper for an understanding of such issues and questions of law as are hereinafter passed upon:

"This action was instituted in the Court of Common Pleas for Colleton County, South Carolina, by the service of a summons on or about July 19, 1934, for the purpose of recovering $1,000.00 and interest actual damages, and $1,900.00 punitive damages on account of the alleged wrongful and fraudulent refusal of the company to deliver to him two certain endowment polices of insurance in the face amount of $500.00 each, or to return to him the sum of $1,000.00 paid to an agent of the company.

"The defendant, by its answer, admitted receipt of the application for the two policies and the preparation of same for delivery, but alleged that the plaintiff failed to pay to it the premiums therefor and accordingly the policies were returned to the home office and cancelled. It further alleged that by the terms of the application and of the policies settlement for the premiums could be made only by bank draft or certified check and that the plaintiff had not employed either of these modes of payment and consequently it was not liable to the plaintiff in any sum whatsoever and specifically denied that it was guilty of any wrongful or fraudulent act in its relation to the plaintiff.

"The case came on to be heard before Honorable J. Henry Johnson and a jury and at the appropriate time the defendant made motions for nonsuit and direction of verdict, which were refused. It also made motion for direction of verdict as to punitive damages, which was likewise refused."

The jury returned a verdict in favor of respondent for $1,000.00 and interest as actual damages, and $950.00 punitive damages. A motion for a new trial was made and refused. Appropriate exceptions bring the case to this Court.

Respondent's entire case depends upon proving a contract between him and appellant. If this is proven, it is admitted there was a breach, although not a fraudulent breach.

The contract sued upon is an application signed by respondent, at the instance of an agent of appellant, requesting appellant to issue him two single payment endowment in-

surance policies, payable at his death to the beneficiary therein named, or five years from the date thereof to respondent, each in the amount of $538.00, with accrued dividends.

The record discloses, stated most favorably to respondent, that a duly licensed agent for the purpose of procuring applications for insurance with appellant, knowing that respondent had come into possession of approximately $4,-000.00, the proceeds of insurance policies issued by appellant company on the life of a son who had died, interested respondent in investing a portion of this money, and succeeded in inducing respondent to put $2,000.00 in endowment policies to be issued by appellant. Respondent, on or about October 1, 1933, signed two applications in blank, which were later filled out by the agent of appellant, so as to apply in each application for two policies, or for four policies in all. The agent of appellant informed respondent that the single premium would have to accompany the application; that she had to have the cash for it. It had been agreed that the premiums for the four policies would be paid in installments of $1,000.00 each, and that two policies would be delivered following the payment of each installment. On October 2, 1933, the wife of respondent paid the agent of appellant the first $1,000.00 installment, and on October 19, 1933, the second installment of $1,000.00 was paid to appellant's agent by check of respondent. Thereafter, the first two, or at least two policies were delivered to respondent; the certified check of appellant's agent having been accepted by the appellant in payment of the premium. The agent of appellant misappropriated one installment of the premiums, and although an application dated December 9, 1933, signed by respondent, was received by appellant, and two policies issued, the policies were not delivered for the reason that the appellant had not received the $1,000.00 single premium, and the policies were thereafter canceled. The agent of appellant had for a period of ten years or more been in its employ as an insurance solicitor, was well known

to respondent, had the right and authority to collect the first premium on ordinary life policies, and had collected a premium for an ordinary policy from respondent. In fact, it was through the neglect of this agent to transmit to appellant such a premium that appellant first learned of this agent's collection and misappropriation of the second $1,-000.00 single premium for the undelivered and cancelled two endowment policies. There is no intimation of fraud and collusion as between appellant's agent and respondent.

The application signed by respondent contained the following: "It is mutually agreed as follows: 1. That the insurance hereby applied for shall not take effect unless and until the policy is delivered to and received by the applicant and the single premium thereon paid in full during his lifetime in the manner hereinafter agreed upon, and then only if the applicant has not consulted or been treated by any physician since his medical examination; 2. That payment of said single premium shall be made only by bank draft or certified check to the order of New York Life Insurance Company, in exchange for its official premium receipt signed by the president, a vice-president, a second vice-president, a secretary or the treasurer of the company and countersigned by the cashier of its branch office; 3. That only the president, a vice-president, a second vice-president a secretary or the treasurer of the company can make, modify or discharge contracts, or waive any of the company's rights or requirements; that notice to or knowledge of the soliciting agent or the medical examiner is not notice to or knowledge of the company, and that neither one of them is authorized to accept risks or to pass upon insurability."

The contract between the agent involved and appellant contained, among other provisions, the following:

"Said first party hereby appoints said second party its special agent for the purpose of canvassing for applications for insurance on the lives of individuals, and of performing such other duties in connection therewith as the officers of

said first party may in writing expressly require of him, and said second party hereby accepts said appointment, upon the following terms, conditions and agreements:

"1st. Said second party shall have no authority for or on behalf of said first party to accept risks of any kind, to make, modify or discharge contracts, to extend the time for paying any premium, to bind the company by any statement, promise or representation, to waive forfeitures or any of the company's rights or customary requirements, to name any extra premium for extra risks or privileges, to receive any moneys due or to become due to said first party except upon applications obtained by or through him and then only in exchange for the coupon receipt attached to the application corresponding in date and number with the application, or upon policies or renewal receipts signed by an executive officer of the first party and sent to him by the first party for collection."

It will be observed that the application specifically provided that no contract binding on the appellant can exist unless and until the policy is delivered to and received by the applicant, and the single premium thereon paid in full only by bank draft or certified check to the order of New York Life Insurance Company in exchange for its official premium receipt, signed by the president, a secretary, or the treasurer of the company, and countersigned by the cashier of the branch office. The application further provided that only the president, a secretary, or the treasurer of the company can make, modify, or discharge contracts, or waive any of the company's rights or requirements.

After looking over the application, respondent signed it, and upon the trial of the case the Circuit Judge correctly charged the jury he was bound by it, unless the company (appellant) waived or relinquished its right to insist upon the provisions hereinabove quoted that are in there for its benefit. Respondent's only contention is that the appellant waived these express conditions of the application quoted.

It is admitted that unless the requirements of the application were waived by the company, respondent has no case.

It is unquestionably true that insurance companies have the right to do business under reasonable rules and regulations necessary to protect their rights against the unauthorized acts of their own agents. When an applicant is aware of and agrees to these requirements by signing the application, the company cannot be held to have waived these requirements merely because the unauthorized agent and the applicant deliberately violate them, without any contributory or condoning or ratifying act on the part of the company or any of its authorized agents.

The validity of the right of companies necessarily having to do business through agents, to limit the authority of such agents, is recognized in the case of *Rabb v. New York Life Ins. Co.*, 108 S. C., 137, 93 S. E., 711, 712, in discussing the effect of Section 2712 of the Code of 1912, now Section 7971, where it is said: "There is nothing in the section which denies or restricts the power of insurance companies to place reasonable limitations upon the authority of their agents. Such limitations are necessary to the successful conduct of the business, and the power to make them is recognized in other statutes regulating the business, and in numerous decisions of this Court rendered since the passage of Section 2712, in some of which that section was considered. In many, perhaps in most of them, the question at issue was the scope of the authority of the agent, real or apparent. That question could not have arisen if it had been thought that the statute removed all limitations upon the authority of such agents. In the recent case of *Rowe v. Ins. Co.*, 90 S. C., 168, 72 S. E., 1018, the right of such companies to make rules or regulations for the conduct of their business, which shall be binding upon those who deal with them, with knowledge thereof, is recognized."

In the case of *McGrath v. Piedmont Mutual Ins. Co.*, 74 S. C., 69, 54 S. E., 218, 219, cited by appellant, the plaintiff

sought to establish a contract by declarations of the agent at the time he received application for membership and insurance and receipted for the premium, that the property was insured from that day hence. Holding that such testimony was inadmissible, the Court said: "The next question we notice is whether the Court erred in allowing witnesses to testify as to declarations made by J. P. Smith, at the time he received the application for membership and insurance and receipted for the premium, that the property was insued from the time receipt was given. No written contract or policy of insurance was issued or delivered in this case, and the plaintiff sought to recover upon a contract based upon the receipt of the application, the premium, the declaration of the Agent Smith, and other circumstances from which acceptance was sought to be inferred. We do not think this evidence was competent. The written application signed by plaintiff expressly provided: 'There is no contract of insurance until the application is accepted by the home office in Spartanburg, subject to the charter, by-laws and rules governing the company.' Under the statute governing the association, insurance could only be issued to members of the association. There was no evidence that Smith, though authorized to solicit applications and forward to the office in Spartanburg and to receive and forward premiums, had any authority whatever to make or deliver contracts of insurance, and therefore his declarations could not be admissible to show a contract he had no power to make. Furthermore, the plaintiff must be held to have known Smith had no such authority, as the declarations were in conflict with the express stipulation in the application requiring acceptance at the home office as essential to such contract."

We are of the opinion that under the facts as disclosed by the record there was a scintilla of evidence of waiver— that is, more than one reasonable inference could be drawn from the testimony. The appellant had issued two policies, accepting the certified check of its agent, and was bound to

have known that the consideration for the policies had been paid to its agent, or its agent had been furnished the money with which to purchase the certified check. It may be said that appellant had the right to assume that respondent had · protected himself in making certain that his money had been used in purchasing the agent's certified check, but the Court could not say, as a matter of law, that this was the only reasonable inference to be drawn from the testimony; although as to the contract sued upon for the delivery of the second two policies, appellant, upon learning that its soliciting agent had collected the premium therefor, promptly repudiated this unauthorized act of its agent and refused to issue the policies (or make any contract in reference thereto), because no compliance was had with its requirements as agreed to in the application therefor by the respondent, and no premium was ever paid to appellant or to any of its *authorized* agents by respondent, nor any one in his behalf, and no premium receipt was ever issued.

"Punitive damages are not recoverable for mere breach of contract. To recover damages of that character in a case of this kind the plaintiff must show that the breach was accomplished with a fraudulent intention, and was accompanied by a fraudulent act." *Sturkie v. Commonwealth Life Ins. Co.,* 18 S. C., 177, 185 S. E., 541, 543, citing *Williams v. Metropolitan Life Ins. Co.,* 173 S. C., 448, 176 S. E., 340, 345; *Welch v. Missouri State Life Ins. Co.,* 176 S. C., 494, 180 S. E., 447.

There is no evidence of fraud on the part of the appellant, except through its agent, Mrs. Olney, who, under her contract of employment and under the terms of the contract herein sued upon, did not have the authority to collect the premiums for this class of policy, and appellant had a right to test its legal liability without incurring risk of being mulcted in damages for doing so. Aside from this, and after respondent became fully aware of the "fraudulent acts" of this agent, the only possible basis for punitive damages, he

wrote the agency director of appellant, and the one with whom he had been dealing in reference to the "fraudulent acts" of Mrs. Olney, the following letter: "Mrs. Olney is here to see me today. I am not going to push the matter any further until Feb. 15th, 1934, as she has asked me to do, in order that she can straighten the matter out by that time. So just let the matter remain as it is until then."

The appellant, after learning that its agent had collected the premium, failed and refused to deliver the policies or reimburse respondent for the amount paid Mrs. Olney, and the most that could be said as to this conduct is that it amounted to a willful breach of the contract, which, within itself, is not sufficient to support a verdict for punitive damages. Acts of willfullness will support punitive damages in tort cases, but not so in suits *ex contractu.*

The judgment appealed from should be affirmed as to actual damages and reversed as to punitive damages.

Mr. Justice Bonham concurs.